UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MASON B. HAMILTON,

                                 Plaintiff,

            v.                                                 10-CV-1507

MICHAEL J. ASTRUE,
Commissioner of Social Security
Administration

                                 Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

Plaintiff Mason Hamilton brought this action pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), appealing a final decision of the Social Security Administration denying his claim for Social Security benefits. Presently before the Court is Defendant's motion for judgment on the pleadings pursuant to Fed. R. Civ. P. Rule 12(c).

## II.     STANDARD OF REVIEW

The Court's review of the Commissioner's determination is limited to two inquiries. First, the Court must determine whether the Commissioner applied the correct legal standard. Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999). Second, the Court reviews whether the Commissioner's findings are supported by substantial evidence within the administrative record. Id. at 773. The Commissioner's finding will be deemed conclusive if supported by substantial evidence. 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991). In the context of Social Security cases,

substantial evidence consists of "more than a mere scintilla" and is measured by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126 (1938). Where the record supports disparate findings and provides adequate support for both the plaintiff's and the Commissioner's positions, a reviewing court must accept the Administrative Law Judge's factual determinations. Quinones v. Chater, 117 F.3d 29, 36 (2d Cir. 1997).

## II.    DISABILITY DETERMINATION-THE FIVE STEP EVALUATION PROCESS

To receive federal disability benefits, an applicant must be "disabled" within the meaning of the Social Security Act. See 42 U.S.C. § 423(a),(d). A claimant must establish "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. § 423(d)(1)(A). The impairment must be of "such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. § 423(d)(2)(A). Agency rules promulgated under the Act outline a five-step analysis to determine disability. 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows:

> (1) The Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience; (4) If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work; (5) If the claimant is unable to perform his or her past work, the Commissioner then determines whether there

is other work which the claimant could perform. The Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps.

Shaw v. Carter, 221 F.3d 126, 132 (2d Cir. 2000).

## III.     DISCUSSION

Plaintiff seeks judicial review of the final decision of the Social Security Administration denying his claim for Social Security benefits.  Plaintiff alleges that he has been disabled since 2006 because of cyclic vomiting, an impulse control disorder and arthritis of the right knee.  On appeal, Plaintiff argues that the Administrative Law Judge (ALJ) failed to properly evaluate the medical evidence, the determined Residual Functional Capacity (RFC) is not supported by substantial evidence, and the Commissioner failed to present vocational or testimonial evidence.

Plaintiff argues that the ALJ erred in determining that Plaintiff's severe medical impairment of degenerative joint disease of the right knee did not meet one of the listed impairments in Appendix 1 and that Plaintiff has the residual functional capacity (RFC) to perform sedentary work.  See 20 C.F.R. §§ 404.1520(d), 404.1567(a) and 416.967(a).  Plaintiff contends that these were incorrect determinations because the ALJ did not properly weigh the opinions of Plaintiff's treating and non-treating physicians.  The ALJ may rely on the following factors when declining to afford controlling weight to a treating physician: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treating relationship; (3) the supportability of the treating source opinion; (4) the consistency of the opinion with the rest of the record; (5) the specialization of the treating physician, and (6) any other relevant factors. 20 C.F.R. §§ 404.1527(d)(2)-(6), 416.927(d)(2)-(6); see also Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999).  Under 20 C.F.R. § 404.1527, not only may the reports of consultative or non-examining physicians constitute as substantial evidence of

disability, they may override the opinions of treating physicians. Pease v. Astrue, 06-CV-0264, 2008 WL 4371779, at *9 (N.D.N.Y. 2008); Snell, 177 F.3d at 132-33.

First, Plaintiff contends that the ALJ should have afforded greater weight to the assessments by treating orthopedist Dr. Brosnan. In 2009 Dr. Brosnan opined that Plaintiff could occasionally lift and carry up to 10 pounds; could sit for two hours without interruption and for a total of eight hours per day; could stand and walk for two hours per day; could frequently reach, handle, feel, push, and pull with both hands; could operate foot controls frequently with his left foot and occasionally with his right; and could occasionally balance and stoop. Dr. Brosnan recognized limitations with regard to climbing, kneeling, crouching, and crawling related activities. Dr. Brosnan also noted that Plaintiff was able to shop, use public transportation, travel without a companion for assistance, climb a few steps at a reasonable pace using a single hand rail, prepare a simple meal and feed himself, care for his personal hygiene, and sort, handle, use paper or file. The ALJ afforded great weight to this opinion. The ALJ afforded less weight to a part of the opinion where Dr. Brosnan checked a box indicating that Plaintiff could not walk a block at a reasonable pace on rough or uneven surfaces. Dr. Brosnan's assessment did not align with his other opinions regarding Plaintiff's ability to walk and was not otherwise supported by the record.

Second, Plaintiff argues that the ALJ disregarded the 2006 opinion of orthopedist Dr. James Naughten, who consultatively examined Plaintiff. Dr. Naughten opined that Plaintiff's prognosis, although "[s]table currently," "[m]ay progress to guarded in the near future." Dr. Naughten's additional findings were inconsistent with this determination. For instance, he stated that Plaintiff had no limitation in his ability to sit or stand and that Plaintiff had only "[m]oderate" limitation in his

ability to lift, carry and handle, as well as "[m]ild-to-moderate" limitation in his ability to walk, climb stairs, push, pull and reach.

Plaintiff's treatment records support the ALJ's evaluation of Dr. Brosnan and Dr. Naughten's opinions. For instance, Plaintiff was examined by treating physician Dr. Werner in April 2005 where he denied difficulty with ambulation and reported only mild pain in his right knee. Physical examination was unremarkable and Plaintiff's knees had full range of motion and no acute inflammation. In October 2006, only one month prior to Plaintiff's amended date of onset, Dr. Werner reported that Plaintiff had asked him to complete two long disability forms regarding his knee pain and anger management disorder, although Dr. Werner stated that he was "not the primary treating physician for either of these issues." Despite this, Dr. Werner opined that Plaintiff could lift up to fifty pounds for up to one-third of a work day, and could stand and/or walk for two hours per day. Dr. Werner opined that Plaintiff had no limitation in his ability to push, pull or sit. Dr. Werner also reported that Plaintiff lived alone and could perform activities of daily living. Plaintiff saw Dr. Werner again in December 2006 with complaints of a cough and sore throat. Plaintiff reported taking Oxycontin as needed for pain, but his gait was normal and he had no complaints regarding his knee. Plaintiff sought treatment again in March 2007 after he sprained his ankle, but he still had no knee complaints. Plaintiff did not seek treatment for orthopedic problems again until December 2007, when he was involved in a car accident while driving and complained of back pain. He attended physical therapy for his back in March 2008, but reported that he continued to "carry firewood in and out of his house" and asserted that he would "be returning to work in about two weeks." None of these medical records suggests that Plaintiff had greater limitations than those found by the ALJ. Accordingly, the ALJ's evaluation of the medical record was proper.

Plaintiff next argues that the ALJ erred in determining that Plaintiff's severe mental impairment of impulse control disorder did not meet one of the listed impairments in Appendix 1 and that Plaintiff has the residual functional capacity (RFC) to perform sedentary work. See 20 C.F.R. §§ 404.1520(d), 404.1567(a) and 416.967(a). A severe mental impairment is a listed impairment if it meets at least two of the following criteria: (1) Marked restriction of activities of daily living; or (2) Marked difficulties in maintaining social functioning; or (3) Marked difficulties in maintaining concentration, persistence, or pace; or (4) Repeated episodes of decompensation, each of extended duration. 20 C.F.R. Pt. 404, Subpt. P, App.1, § 12.04A.

Plaintiff contends that the ALJ did not sufficiently consider opinions by the treating physician Dr. Werner dated October 2001, April 2004, and September 2006 regarding Plaintiff's ability to manage stress and interact with others. These opinions were completed prior to Plaintiff's onset date of November 2006. In addition, Dr. Werner stated in October 2006 that he was "not the primary treating physician" for Plaintiff's asserted psychiatric impairment and also qualified his opinion with a note that Plaintiff "should be evaluated by specialty physicians" including a psychiatrist. Because Dr. Werner was not a specialist in psychiatry, the ALJ afforded less weight to his opinion in determining Plaintiff's mental impairments. See 20 C.F.R. §§ 404.1527(d)(2)-(6), 416.927(d) (2)-(6); see also Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999). Regardless, by October 2006, Dr. Werner opined that Plaintiff's attention, concentration, orientation and memory were "all ok at present." Dr. Werner also reported that Plaintiff had a "good attitude," clear speech, and "normal" or "good mood/affect." Dr. Werner did note some limitations in social interaction and in sustained concentration and persistence, but he qualified these as self-reported.

In 2007, Dr. Werner referred Plaintiff to the Chenango County Department of Social Services for psychiatric treatment, where he saw psychiatrist Dr. David Carr.  Dr. Carr reviewed Plaintiff's prior mental health records.  Upon examination, Plaintiff had fair to good hygiene, cooperative attitude, and behavior "within [the] normal range".  His thought process was linear and goal directed, with logical and relevant content, and his speech was normal in rate and volume.  Plaintiff's mood was "somewhat" depressed and anxious, but his affect was congruent and full-range.  He was oriented to person, place, and time, with "unimpaired" concentration, intact memory, a full fund of information, and fair insight and judgment.  Plaintiff cared for his parents, performed household chores, and completed activities of daily living independently; he also had regular contact with male and female friends, as well as positive relationships with past girlfriends.  Dr. Carr opined that Plaintiff had "normal" ability to understand, carry out, and remember instructions, as well as "normal" ability to respond appropriately to co-workers and to supervision, and "normal" ability to meet quality standards and production norms.  Dr. Carr assessed that Plaintiff might have difficulty sustaining adequate attendance, but noted that Plaintiff ascribed his "poor follow through" with mental health appointments to "transportation problems" rather than the effects of his mental impairment

In forms completed in October 2008 and April 2009, Dr. Werner continued to report that Plaintiff had no limitations in understanding and remembering instructions, in carrying out instructions, and in making simple decisions.  He assessed, however, greater limitations in Plaintiff's ability to interact appropriately with others, maintain socially appropriate behavior without exhibiting behavior extremes, and function in a work setting at a consistent pace.  In this instance, Dr. Werner's opinion conflicted with  Dr. Carr's opinion which was the only available psychiatric treatment records from the period at issue.  See  20 C.F.R. §§ 404.1527(d)(4), 416.927(d)(4).  Moreover, Dr. Werner previously

stated that he was not the primary provider of psychiatric care and that Plaintiff needed to be evaluated by a psychiatrist. Accordingly, the ALJ was not required to afford his opinions any greater weight.

Plaintiff argues that the ALJ improperly afforded less weight to the 2006 opinion of consultative psychologist Dr. Moore in which she stated that his psychiatric problems "may significantly interfere with the claimant's ability to function on a daily basis." The frequency of examination is one factor to be considered when weighing a medical opinion and an opinion will be given more weight the more consistent it is with the record as a whole. See 20 C.F.R. §§ 404.1527(d), 416.927(d). Moreover, the extent to which a doctor is familiar with other information in a claimant's record is a factor that may support the ALJ's opinion. See 20 C.F.R. §§ 404.1527(d)(6), 416.927(d)(6). Unlike Dr. Carr, Dr. Moore did not review Plaintiff's additional medical records. Moreover, her assessments were based on a one-time examination in 2006 where she stated that the Plaintiff seemed "limited". Dr. Moore articulated similar opinions reflected in Dr. Carr's assessments. Plaintiff could follow and understand simple instructions and could perform simple and rote tasks. She assessed some limitations in attention and concentration but she opined that Plaintiff's memory was intact and that he was able to count and perform other simple calculations. Accordingly, the ALJ's determination to afford less weight to Dr. Moore's opinion was proper.

The ALJ provided weight to a January 2007 reviewing psychology consultative by Dr. Edward Kamin. Dr. Kamin opined that Plaintiff had moderate limitations in social functioning and maintaining concentration but he also stated that Plaintiff "would be able to perform simple tasks in a job where he would not work closely with other people." Unskilled "jobs ordinarily involve dealing primarily with objects, rather than with data or people," and even "some limitation [in] a claimant's

ability to interact with people would not preclude unskilled work." Conte v. Astrue, No. 08-CV-01185 2010 WL 2730661 at *8 (N.D.N.Y. 2010) (citing SSR 85-15).

Plaintiff argues that the opinion of Dr. Nathan Hare warrants remand because the ALJ did not consider his opinion in determining whether Plaintiff is disabled. Dr. Hare's report was submitted after the ALJ's decision.[1] Dr. Hare's report reflects only the findings of a single examination performed at the request of Plaintiff's attorney, with no treatment relationship established. The report is partially based on Plaintiff's self-reported work history that varied significantly from the description he provided in other contexts. Plaintiff told Dr. Hare that he had periods of employment that lasted only two to four months at a time and ended because of "temper problems" and because he walked off the job. In contrast, in forms submitted in connection with his application for benefits, Plaintiff stated that he had worked for up to eight months at a time in factory positions in 2002, 2004-05, and 2006, as well as at a carnival for five years ending in 1994. He also said he had worked as an assistant manager at a gas station in 2000-01, as a waste removal mechanic in 1997, and as a mold and tool packer in 1995-96. Plaintiff testified that his most recent job ended when he was "[d]ownsized," that he quit the most recent factory jobs because his leg did not permit him to stand for the period required, that his work at a gas station ended when a customer drove off without paying, and that he left the carnival work after witnessing a violent altercation. In none of these cases did Plaintiff say that he left because of temper problems or due to a mental impairment. Moreover, Dr. Hale's opinion is inconsistent with the opinions offered by Doctors Carr, Brosnan, Moore and Kamin.

---

[1] During the September 9, 2009 hearing the ALJ articulated that the instant case was designated "aged" by the Commissioner of Social Security, and therefore, the case must be decided before the end of the fiscal year. The ALJ advised Plaintiff's attorney that she must submit the medical report before the end of the fiscal year. Plaintiff's attorney did not submit the report by Dr. Hare in a timely manner. The Appeals Council reviewed Dr. Hale's report and concluded that it did not provide a basis to disturb the ALJ's decision. See 20 C.F.R. §§ 404.970(b), 416.1470(b).

Plaintiff argues that the ALJ failed to consider Plaintiff's statements concerning his impairments in determining whether Plaintiff could perform sedentary work. The ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms but the Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible. Plaintiff must produce appropriate, probative evidence in support of his statements of symptoms. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). The ALJ is to consider information about a claimant's prior work record as part of the evidence relevant to credibility and the consistency of the individual's statements with information in the record more generally. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); see SSR 96-7p; see also Schaal v. Apfel, 134 F.3d 496, 502 (2d Cir. 1998). In addition, the ALJ's observations during the hearing may be considered as one of several factors in evaluating credibility. Schaal v. Apfel, 134 F.3d at 502. Plaintiff did not mention his mental impairments as a reason for leaving work. This suggests that a mental impairment was not a primary barrier to employment. Moreover, the ALJ noted that Plaintiff was generally cooperative in responding to questions at the hearing and his expressive and receptive language skills were generally adequate. Plaintiff's reported activities also suggested a greater degree of functioning than alleged. For example, in March 2008, Plaintiff told his physical therapist that he would "be returning to work in about two weeks." He drove a car and a motorcycle. He reported that he regularly carried firewood. These admissions suggest that he retains some ability to use his back and right leg. He successfully completed a twelve week computer course in 2007, during which he was able to interact with a teacher and other students. Moreover, he told Dr. Carr that he had "regular contact with male [and] female friends." Given the evidence of record the ALJ properly exercised her discretion to evaluate Plaintiff's credibility.

Plaintiff argues that the ALJ erred by failing to consult a vocational expert and relying instead on the Commissioner's Medical-Vocational Guidelines (Guidelines) in determining whether there was work in the national economy that Plaintiff could perform. See 20 C.F.R. Part 404, Subpart P, Appendix 2. Plaintiff asserts that his limitations were nonexertional and the Guidelines may only be used to evaluate exertional limitations. If a claimant has nonexertional limitations that "significantly limit the range of work permitted by his exertional limitations," the ALJ is required to consult with a vocational expert. Bapp v. Bowen, 802 F.2d 601, 605 (2d Cir. 1986)(quoting Blacknall v. Heckler, 721 F.2d 1179, 1181 (9th Cir. 1983)). However, the "mere existence of a nonexertional impairment does not automatically. . . preclude reliance on the guidelines." Id. at 603. A nonexertional impairment "significantly limit[s]" a claimant's range of work when it causes an "additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." Id. at 605-06. The ALJ found that Plaintiff's mental condition did not limit his ability to perform unskilled work, including carrying out simple instructions, dealing with work changes, and responding to supervision. Plaintiff's nonexertional limitations did not result in an additional loss of work capacity and, thus, the ALJ's use of the Guidelines was permissible. See Zabala v. Astrue, 595 F.3d 402, 411 (2d Cir. 2010).

Finally, Plaintiff argues that his cyclic vomiting syndrome should have been found to be a severe impairment. The ALJ concluded that Plaintiff's cyclic vomiting syndrome was not a severe impairment because it does not more than minimally affect his ability to engage in basic work activity. None of Plaintiff's treating physicians attributed specific limitations to this condition, or assessed greater restrictions than the asserted mental impairments. Dr. Werner only began listing "cyclic" or "episodic" vomiting on assessment forms in 2008, and even then, did not specify any additional

- 11 -

limitations due to this condition. Doctors Carr, Moore, and Kamin did not include a vomiting syndrome as a separate diagnosis in their evaluations. Accordingly, the ALJ had substantial evidence to support her determination. See 20 C.F.R. §§ 404.1520(c), 416.920(c).

Despite Plaintiff's asserted symptoms of cyclic vomiting, impulse control disorder and arthritis of the right knee, there is substantial evidence supporting the ALJ's determination that Plaintiff is not disabled.

## IV.   CONCLUSION

For the foregoing reasons, the Court finds that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's motion for judgment on the pleadings is GRANTED and the determination of the Commissioner is AFFIRMED.

**IT IS SO ORDERED.**

Dated: March 26, 2012

_Thomas J. McAvoy_
Thomas J. McAvoy
Senior, U.S. District Judge